PER CURIAM.
Peter Sassi appeals a final order of the Florida Unemployment Appeals Commission affirming the appeals referee’s decision declaring him ineligible for unemployment compensation benefits. We affirm.
On March 19, 1992, Five Star Productions (“Five Star”) terminated Sassi’s employment as a cameraperson. In connection with Sas-si’s request for unemployment benefits, a claims examiner interviewed one of Five Star’s executive producers who explained Sassi had been terminated because of his poor attitude and deficient camera work. The claims examiner determined Sassi was entitled to unemployment compensation benefits because he had been discharged for reasons other than misconduct connected with his work.
Five Star appealed the determination of the claims examiner to the Unemployment Commission Appeals Bureau submitting a letter detailing Sassi’s poor performance record. At the hearing, the employer introduced statements from coworkers criticizing Sassi’s technical competency and also introduced a letter written by one of its executive producers explaining the circumstances surrounding Sassi’s termination. Improper audio dubbing, inadequate color balancing, failure to clean a $30,000 camera, repeated rewiring of dubbing equipment contrary to the express instructions of the owners, failure to complete a specific assignment and a difficult attitude were cited as reasons for Sassi’s termination. The executive producer also testified at the hearing. The referee questioned Sassi about instructions he had received not to rewire or disconnect the dubbing equipment and about keeping his video equipment clean. Sassi explained these incidents but did not deny them. In addition, Sassi was given a copy of the executive producer’s letter and afforded an opportunity to question him.
The referee found Sassi had been discharged for his overall lack of adequate job performance. The referee made the following findings of fact and conclusions of law:
FINDINGS OF FACT: ... The claimant was warned more than once to make sure his camera equipment was kept clean inside and out. The claimant always made sure that the lenses and viewfinders were kept clean, but the claimant did not always clean the outside casing of his camera. The claimant was also warned not to touch any of the wiring done by one of the company’s owners. Nonetheless, the claimant did rewire items from time to time, because the claimant did not believe the owner’s way of routing the cables was always correct. The claimant would not ask permission to reroute the cables, he simply switched them.
CONCLUSIONS OF LAW: ... The facts in this case show that the claimant was discharged ... for violation of certain of the employer’s rules and because of the employer’s dissatisfaction with the claim *866 ant’s work. It was not shown that the claimant’s work performance was such that it would constitute misconduct. There were some mistakes, which might have arisen from lack of attention or haste, but it was not shown that these mistakes were the result of a deliberate attempt to do a job badly. The claimant was given two orders which he did violate repeatedly and intentionally, namely the requirement that the claimant keep all of his camera equipment clean and the order not to change wiring when it was set by the owner. In both cases, the claimant substituted his judgment of what was desirable or necessary for that of the employer. The claimant did this even though he had been warned not to. The claimant could have attempted to operate in the manner the employer wanted him to and then, upon a showing that the operation was impossible or extremely impractical, the claimant could have requested permission to do things a different way. The claimant did not do this. Therefore, it must be concluded that the claimant was discharged for misconduct connected with work.
(emphasis added). The Unemployment Appeals Commission affirmed the referee’s decision.
Section 443.101(1) disqualifies from the receipt of unemployment compensation benefits an individual who “has been discharged by his employing unit for misconduct connected with his work,_” Section 443.036(26) further defines “misconduct” as follows:
MISCONDUCT. — “Misconduct” includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer’s interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer’s interests or of the employee’s duties and obligations to his employer.
The referee found Sassi’s refusal to (1) keep a $30,000 camera clean and (2) comply with his employer’s specific instructions not to rewire specific equipment, despite the repeated warnings and requests of his employer, fell within the statutory definition of “misconduct.” Sassi contends he had been discharged for reasons other than misconduct connected with his work and is entitled to unemployment compensation benefits. We disagree.
The record contains sufficient evidence to support the referee’s conclusion that Sassi’s repeated and intentional violation of his employer’s orders regarding the camera and equipment rewiring constituted misconduct. See Rubido v. Brinks, Inc., 601 So.2d 1298 (Fla. 3d DCA 1992) (finding misconduct where claimant rode in passenger seat of armored truck although expressly forbidden to ride anywhere other than in rear of truck); Trinh Trung Do v. Amoco Oil Co., 510 So.2d 1063 (Fla. 4th DCA 1987) (finding misconduct in employee’s constant excessive driving above speed limit); and National Ins. Servs., Inc. v. Unemployment Appeals Comm’n, 495 So.2d 244 (Fla. 2d DCA 1986) (finding misconduct in employee’s failure to clean office coffee area pursuant to employer’s policy).
The fact that one of the employer’s executive producers informed the claims examiner that Sassi had been terminated for his bad attitude and defective camera work, rather than for his failure to maintain the camera and to refrain from rewiring certain equipment, does not in our opinion invalidate the referee’s decision that Sassi engaged in misconduct sufficient to deny his claim. Here, we believe Sassi’s episodes of “misconduct” were inherently contained within the employer’s allegations of his deficient camera work and bad attitude.
Accordingly, we affirm the final order of the Commission.
AFFIRMED.
DELL, C.J., and ANSTEAD and WARNER, JJ., concur.